No. 14-55583

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CITY OF SANTA MONICA,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA; FEDERAL AVIATION ADMINISTRATION; and
MICHAEL HUERTA, in his official capacity as Administrator of
the Federal Aviation Administration,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA (CV 13-8046) (Hon. John F. Walter)

**BRIEF FOR APPELLEES**

Of counsel:

KATHRYN B. THOMSON
  *General Counsel*
PAUL M. GEIER
  *Assistant General Counsel*
  *for Litigation*
PETER J. PLOCKI
  *Deputy Assistant General*
  *Counsel for Litigation*
  *U.S. Department of Transportation*

REGGIE GOVAN
  *Chief Counsel*
DAPHNE FULLER
  *Assistant Chief Counsel*
JONATHAN CROSS
  *Manager, Airports Law Branch*
SCOTT MITCHELL
  *Attorney-Advisor*
  *Federal Aviation Administration*

JOYCE R. BRANDA
  *Acting Assistant Attorney General*

ANDRÉ BIROTTE JR.
  *United States Attorney*

BETH S. BRINKMANN
  *Deputy Assistant Attorney General*

MARK B. STERN
ALISA B. KLEIN
  *(202) 514-1597*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7235*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20530*
  *alisa.klein@usdoj.gov*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

STATEMENT OF THE ISSUE...............................................................................4

STATEMENT OF THE CASE.................................................................................5

     A.     Background ....................................................................................5

     B.     District Court Proceedings ...........................................................8

SUMMARY OF ARGUMENT ..............................................................................12

ARGUMENT

     This Action Is Time Barred Because The City Did
     Not Bring Suit Within The Quiet Title Act's Twelve-Year
     Statute Of Limitations .......................................................................14

     A.     The Quiet Title Act............................................................14

     B.     The City Knew Or Should Have Known, More Than
           Twelve Years Before This Suit Was Filed, That The
           United States Claimed An Interest Adverse To The City's ...............15

     C.     The United States Did Not Abandon Its Interest
           In The Airport Property.....................................................19

     D.     The Statute Of Limitations Issue Is Not
           Inextricably Intertwined With The Merits .........................23

CONCLUSION ....................................................................................................25

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                          **Page**

*Alaska v. Babbitt*,
    75 F.3d 449 (9th Cir. 1995) ...................................................................15

*Block v. North Dakota*,
    461 U.S. 273 (1983) ................................................................4, 14, 23

*California, ex. rel., State Land Comm'n v. Yuba Goldfields, Inc.*,
    752 F.2d 393 (9th Cir. 1985) ...............................................................15

*City of Santa Monica v. FAA*,
    631 F.3d 550 (D.C. Cir. 2011) ...........................................................1, 5

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014) ...............................................................4

*Kingman Reef Atoll Investments, LLC v. United States*,
    541 F.3d 1189 (9th Cir. 2008) ....................................................*passim*

*Rio Grande Silvery Minnow v. Bureau of Reclamanation*,
    599 F.3d 1165 (10th Cir. 2010) ...........................................................23

*Shultz v. Dep't of Army*,
    886 F.2d 1157 (9th Cir. 1989) .............................................................15

*Spirit Lake Tribe v. North Dakota*,
    262 F.3d 732 (8th Cir. 2001) ...............................................................15

*United States v. City of Santa Monica*,
    330 F. App'x 124 (9th Cir. 2009) ......................................................1, 5

**Statutes:**

28 U.S.C. § 2409a ...................................................................................1, 4

28 U.S.C. § 2409a(a) ........................................................................2, 8, 14

28 U.S.C. § 2409a(g) ...........................................................2, 9, 12, 14, 23

Surplus Property Act of 1944, Pub. L. No. 457, 58 Stat. 765 (1944),
   *amended by* Pub. L. No. 289, 61 Stat. 678 (1947), *codified,*
   *as further amended, at* 49 U.S.C. § 47151 ............................................................6

## INTRODUCTION

Santa Monica Airport has long served as a reliever airport for the Los Angeles International Airport. The City's obligation to operate the property as an airport derives from two independent sources. First, as a recipient of federal funds for airport improvement, the City agreed to operate Santa Monica Airport for public use. *See City of Santa Monica v. FAA*, 631 F.3d 550, 552 (D.C. Cir. 2011); *United States v. City of Santa Monica*, 330 F. App'x 124, 125 (9th Cir. 2009). Second, as a recipient of surplus federal property, the City agreed to use the property as an airport. The obligations arising from the acceptance of surplus property and, in particular, the covenants agreed to in the 1948 Instrument of Transfer, are the subject of this lawsuit. In the 1948 Instrument of Transfer, the City agreed to certain covenants that "run with the land," including the requirement that "the land, buildings, structures, improvements and equipment in which this instrument transfers any interest shall be used for public airport purposes." Excerpts of Record (ER) 350 (1948 Instrument of Transfer).

In 2013, the City of Santa Monica filed this action under the Quiet Title Act, 28 U.S.C. § 2409a, seeking a declaratory judgment that the covenants in the 1948 Instrument of Transfer do not require the City to operate the property as an airport or give the United States the right to take title if the City ceases to operate the property as an airport. The district court dismissed the claim as time-barred

-1-

because the City did not bring suit within the Quiet Title Act's twelve-year statute of limitations, *id*. § 2409a(g).

The judgment of dismissal should be affirmed. The Quiet Title Act is a limited waiver of sovereign immunity that allows the United States to be named as a defendant in a suit to adjudicate a disputed title to real property in which the United States claims an interest (other than a security interest or water rights). 28 U.S.C. § 2409a(a). However, such an action "shall be barred unless it is commenced within twelve years of the date upon which . . . the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." *Id*. § 2409a(g). This statute of limitations is jurisdictional. *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189, 1195-96 (9th Cir. 2008).

The Quiet Title Act's statute of limitations bars this suit. Based on its review of the undisputed facts, the district court correctly concluded that "the record unquestionably demonstrates that the City knew, or should have known, that the United States claimed an interest in the Airport Property as early as 1948," when the City executed the Instrument of Transfer. ER10. That instrument "put the City on notice that the United States claimed a substantial property interest in the land sufficient to create a cloud on title." ER11. "In addition, the City's statements and conduct since agreeing to the terms of the Instrument of Transfer demonstrate the City's awareness that the United States had a continuing and

substantial interest in the Airport Property, and support the Court's conclusion that the statute of limitations accrued more than twelve years ago." *Ibid.* For example, on three occasions—in 1952, 1956, and 1984—the City requested that the United States release specified parcels of land from the restrictions in the Instrument of Transfer. *See ibid.* Moreover, in a legal opinion issued in 1962, the City Attorney concluded, based in part on the Instrument of Transfer, that "'the City cannot legally, unilaterally, on its own motion, abandon the use of the Santa Monica Municipal Airport as an airport.'" ER11-12; *see also* ER189 & n.10 (1975 opinion of the California Attorney General, reiterating the City Attorney's 1962 opinion).

The district court correctly rejected the City's contention that the United States "'clearly and unequivocally abandon[ed] its interest'" in the Airport Property when it settled certain disputes with the City in 1984. ER12 (quoting *Kingman Reef*, 541 F.3d at 1201). To the extent that the 1984 Settlement Agreement addressed the Instrument of Transfer, it released the restrictions from a specified parcel of land only. *See* ER371 ("Consent to Use of Land"). Moreover, the 1984 Settlement Agreement had a limited duration and did not purport to determine the rights and obligations of the parties after the Agreement's expiration in 2015. *See* ER369 ("Scope and Duration" of the Settlement Agreement).

Contrary to the City's contention, the statute of limitations issue is not inextricably intertwined with the merits of its claim. This Court rejected the same

contention in *Kingman Reef*, explaining that "the question whether this action was timely was not inextricably intertwined with the ultimate merits issue of ownership" because the "crucial issue in the statute of limitations inquiry is whether the plaintiff had notice of the federal claim, not whether the claim itself is valid." 541 F.3d at 1197 (internal quotation marks and citation omitted); *see also Block v. North Dakota*, 461 U.S. 273, 291-92 (1983) (holding that dismissal of a Quiet Title Act claim as time barred does not resolve the underlying title dispute). Accordingly, the district court properly declined the City's invitation to inquire into the validity of the federal government's claim. *See* ER11.

The City also alleged constitutional claims, which the district court dismissed as unripe. *See* ER14-17. The City did not challenge that ruling in its opening brief and thus waived the right to do so. *See Jimenez v. Allstate Ins. Co*., 765 F.3d 1161, 1165 n.4 (9th Cir. 2014) ("We review only issues which are argued specifically and distinctly in a party's opening brief."). We therefore do not discuss the constitutional claims in this brief.

## STATEMENT OF THE ISSUE

Whether this action under the Quiet Title Act, 28 U.S.C. § 2409a, is time barred because the City did not bring suit within the twelve-year statute of limitations.

-4-

## STATEMENT OF THE CASE

### A.    Background

Santa Monica Airport serves general aviation aircraft and functions as a reliever airport for the Los Angeles International Airport.  *See City of Santa Monica v. FAA*, 631 F.3d 550, 551 (D.C. Cir. 2011).  As such, the Santa Monica Airport plays an important role in the regional and national system of air transportation by diverting aircraft from other more heavily used airports in the greater Los Angeles area.  *See United States v. City of Santa Monica*, 330 F. App'x 124, 125 (9th Cir. 2009) (noting the "large disruption to air traffic" that would occur if the City were allowed to ban certain categories of aircraft).

The City's obligation to operate Santa Monica Airport as an airport derives from two independent sources.  First, as a recipient of federal funds for airport improvement, the City agreed to operate the airport for public use.  *See City of Santa Monica*, 631 F.3d at 552.  The City's grant obligations are not at issue here.[1]

Second, as a recipient of surplus federal property in 1948, the City agreed to certain covenants that "run with the land," including the requirement that "the land,

---

[1] The duration of these grant obligations is the subject of an administrative complaint that is pending before the Federal Aviation Administration (FAA).  *See National Business Aviation Ass'n v. City of Santa Monica*, No. 16-4-04/FAA-2014-0592 (complaint filed on July 2, 2014); *see also* ER4 & n.2 (noting but not resolving the dispute as to whether the City's grant obligations run to 2023 or expired in 2014).

buildings, structures, improvements and equipment in which this instrument

transfers any interest shall be used for public airport purposes." ER350. The

conveyance was made pursuant to the Surplus Property Act of 1944, as amended,

which allows the federal government to convey to a State or local government any

interest in surplus property that is desirable for developing or improving a public

airport. *See* Surplus Property Act of 1944, § 13(g), Pub. L. No. 457, 58 Stat. 765

(1944), *amended by* Pub. L. No. 289, 61 Stat. 678 (1947), *codified, as further*

*amended, at* 49 U.S.C. § 47151. The restrictions in the 1948 Instrument of

Transfer are the subject of this suit, as discussed below.[2]

The City acquired the initial airport property, which was commonly known

as Clover Field, in 1926. *See* ER284 (Complaint ¶¶ 14-15). In 1941, the City and

the federal government entered into two leases (subsequently modified) for use of

Clover Field to aid the war effort. *See* ER313-45 (Complaint, Exhibits A and B).

From 1941 to 1946, the United States extensively improved Clover Field,

including but not limited to the construction of a concrete runway, taxiway,

hangars, and a control tower. *See*, *e.g.*, ER204 (City's 1946 request to acquire

surplus federal property); ER195 (1946 declaration of surplus property) (noting

---

[2] The City also received other federal property pursuant to the Surplus
Property Act, but only the 1948 conveyance is at issue in this case.

that the airport "expanded considerably from its original size during the Wartime occupancy of the Government").

In 1946, the City formally requested "that it be given an opportunity to acquire, without reimbursement, all government owned airport facilities located upon land owned by the City of Santa Monica for the purpose of encouraging and fostering the development of civil aviation." ER205. The federal government granted the City's request, *see* ER208-10, and, in 1948, the parties executed an Instrument of Transfer in which the United States surrendered its leasehold interest and several easements, as well as extensive airfield improvements including the entire landing area, the concrete 5,000-foot runway, the taxiway system, hangars, and control tower. ER347-50 (Instrument of Transfer); ER204 (City's request for surplus property).

Pursuant to the Instrument of Transfer, the United States "remised, released and forever quitclaimed" all of its "right, title, interest and claim" to the described "real, personal, or mixed property" to the City, subject to reservations, restrictions and conditions specified in the Instrument. ER347 (Instrument of Transfer). The Instrument of Transfer provided that "by acceptance of this instrument or any rights hereunder," the City "agrees that the aforesaid surrender of leasehold interest, transfer of structures, improvements and chattels, and assignment, shall be subject to" specified conditions "which shall run with the land," ER350, including:

> (1) That, except as provided in subparagraph (6) [below], the land, buildings, structures, improvements and equipment in which this instrument transfers any interest shall be used for public airport purposes for the use and benefit of the public . . . .

> (6) That no property transferred by this instrument shall be used, leased, sold, salvaged, or disposed of by [the City] for other than airport purposes without the written consent of the Civil Aeronautics Administrator . . . .

ER350, ER352. In addition, the Instrument of Transfer contained a reversion clause stating that "the title, right of possession and all other rights transferred by this instrument to [the City], or any portion thereof, shall at the option of [the United States] revert to [the United States]," if the conditions in the Instrument of Transfer are not met. ER352.

The City confirmed its acceptance of the Instrument of Transfer by passing a resolution in 1948, *see* ER247, and the Instrument of Transfer was recorded as a quitclaim deed with the County Recorder for the County of Los Angeles, *see* ER248.

## B.   District Court Proceedings

In 2013, the City filed this lawsuit under the Quiet Title Act, which provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a). The City sought a declaratory judgment that it "has unencumbered title to the Airport Property." ER310 (Prayer for Relief ¶ 1). The City asked the

district court to declare that "title to the Airport Property is quieted as against any interest of the United States"; that "the claims of the United States to the Airport Property are invalid"; and that "the United States has no right, title, or interest in the Airport Property."  ER310-11 (Prayer for Relief ¶¶ 2, 3).[3]

The district court dismissed the claim as barred by the Quiet Title Act's statute of limitations, which provides that an action "shall be barred unless it is commenced within twelve years of the date upon which . . . . the plaintiff or his predecessor in interest knew or should have known of the claim of the United States."  28 U.S.C. § 2409a(g).  Based on its review of the undisputed facts, *see* ER1 n.1, the district court concluded that "the record unquestionably demonstrates that the City knew, or should have known, that the United States claimed an interest in the Airport Property as early as 1948."  ER10.[4]

The district court explained that the Instrument of Transfer "expressly provides that, in the event the Airport Property is used 'for other than airport purposes without the written consent of the Civil Aeronautics Administrator,' 'the title, right of possession and all other rights transferred by this instrument to the

---

[3] The City also alleged constitutional claims but, as noted above, the City has not challenged the dismissal of its constitutional claims and we thus do not address them here.  *See supra* p. 4.

[4] The district court considered materials submitted as part of the complaint and materials that are subject to judicial notice under Federal Rule of Evidence 201.  *See* ER9 (noting that these materials may be considered without converting a motion to dismiss into a motion for summary judgment).

[City], or any portion thereof, shall at the option of [the United States] revert to the [United States] . . . .'" ER10. The court concluded that "the use of the term 'title' in the Instrument of Transfer would have, or at least should have, alerted a reasonable landowner that the government claimed an interest in the title to the land." ER11. "Moreover, even if the Instrument of Transfer did not provide notice that the United States claim an interest in the *title* to the land, it certainly put the City on notice that the United States claimed a substantial property interest in the land sufficient to create a cloud on title." *Ibid.* (emphasis in original).

The district court concluded that "the City's statements and conduct since agreeing to the terms of the Instrument of Transfer demonstrate the City's awareness that the United States had a continuing and substantial interest in the Airport Property, and support the Court's conclusion that the statute of limitations accrued more than twelve years ago." ER11. "Indeed, the City requested on three occasions—in 1952, 1956 and 1984—that the United States release parcels of land from the restrictions in the 1948 Instrument of Transfer." *Ibid.* "Moreover, in 1962, in response to a question posed by the City Council about [Santa Monica Airport's] future operations, the City Attorney issued a legal opinion which concluded, based in part on the Instrument of Transfer, that 'the City cannot legally, unilaterally, on its own motion, abandon the use of the Santa Monica Municipal Airport as an airport." ER11-12. The court concluded that the City's

statements and conduct belie the City's present contention that the City was unaware that the United States continued to claim an interest in the Airport Property after 1953. ER12 n.7.

The district court rejected the City's contention that the United States "'clearly and unequivocally abandon[ed] its interest'" in the Airport Property through statements in a 1971 letter, provisions of a 1984 Settlement Agreement, or statements in a subsequent administrative determination. ER12 (citation omitted). The court explained that the 1971 letter made no mention of the Insrument of Transfer and was merely an informal, non-binding statement to a third party. *See* ER6, ER12. The 1984 Settlement Agreement released the Instrument's restrictions from a specified parcel of land only and did not purport to determine the City's obligations after the Agreement's expiration in 2015. *See* ER5-6, ER13. The subsequent administrative determination did not consider the Instrument of Transfer, which was not before the agency. *See* ER6, ER13.

The district court rejected the City's contention that the statute of limitations issue is inextricably intertwined with the merits. ER13-14. The court explained that "[t]he crucial issue in the statute of limitations inquiry is whether the plaintiff had notice of the federal claim, not whether the claim itself is valid." *Ibid.* (quoting *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189,

1197 (9th Cir. 2008)).  The district court thus refrained from addressing the City's arguments regarding the validity of the federal government's claim.  *See* ER11.

## SUMMARY OF ARGUMENT

In this suit filed in 2013 under the Quiet Title Act, the City of Santa Monica sought a declaratory judgment that it has "unencumbered title" to the Santa Monica Airport Property and that "the United States has no right, title, or interest in the Airport Property."  ER310-11.  The district court correctly held that this action is barred by the Quiet Title Act's statute of limitations, 28 U.S.C. § 2409a(g), because the City knew or should have known more than twelve years before it filed suit that the United States claimed an interest in the Airport Property that was adverse to the City's.

As a recipient of surplus federal property that was transferred to the City in 1948, the City agreed to a series of covenants that "run with the land," including the requirement that "the land, buildings, structures, improvements and equipment in which this instrument transfers any interest shall be used for public airport purposes."  ER350.  The 1948 Instrument of Transfer further provided that "the title, right of possession and all other rights transferred by this instrument to [the City], or any portion thereof, shall at the option of [the United States] revert to [the United States]" if the conditions of the Instrument of Transfer are not met.  ER352.  Thus, the 1948 Instrument of Transfer "certainly put the City on notice that the

United States claimed a substantial property interest in the land sufficient to create a cloud on title." ER11 (district court decision).

Although the City now contends (Br. 35) that the federal government's interest in the airport land ended in 1953, the City's own conduct and statements after 1953 belie that contention. For example, in 1984, the City and the FAA executed an agreement in which the FAA released from the restrictions in the Instrument of Transfer a specified parcel "of land designated as parkland and residual land." ER371. Given that express release of restrictions on airport land, the City cannot plausibly contend that it was unaware that the United States claimed an interest in the land at that time.

The district court correctly rejected the City's contention that the same 1984 agreement clearly and unequivocally abandoned the federal government's interest in the Airport Property. The release pertained to a specified parcel of land only. ER371. Moreover, the 1984 agreement had a limited duration and did not purport to determine the rights and obligations of the parties after the agreement's expiration in 2015. ER369.

The City is equally mistaken in urging that the statute of limitations issue is inextricably intertwined with the merits. This Court rejected the same contention in *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008), explaining that "the question whether this action was timely was not

inextricably intertwined with the ultimate merits issue of ownership" because the "crucial issue in the statute of limitations inquiry is whether the plaintiff had notice of the federal claim, not whether the claim itself is valid."  Accordingly, the district court properly refrained from addressing the merits of the City's claim.

## ARGUMENT

### This Action Is Time Barred Because The City Did Not Bring Suit Within The Quiet Title Act's Twelve-Year Statute Of Limitations

### A.    The Quiet Title Act

The Quiet Title Act is a limited waiver of the sovereign immunity of the United States.  It provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights."  28 U.S.C. § 2409a(a).  This waiver of sovereign immunity is qualified by a statute of limitations, which provides that an action under the Quiet Title Act "shall be barred unless it is commenced within twelve years of the date upon which . . . the plaintiff or his predecessor in interest knew or should have known of the claim of the United States."  *Id*. § 2409a(g).  The Quiet Title Act's statute of limitations is jurisdictional.  *Kingman Reef Atoll Investments, LLC v. United States*, 541 F.3d 1189, 1195-96 (9th Cir. 2008) (citing *Block v. North Dakota,* 461 U.S. 273, 292 (1983)).

The "crucial issue in the statute of limitations inquiry is whether the plaintiff had notice of the federal claim, not whether the claim itself is valid." *Kingman Reef*, 541 F.3d at 1197. "All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Id.* at 1198 (quoting *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 738 (8th Cir. 2001)).[5]

## B. The City Knew Or Should Have Known, More Than Twelve Years Before This Suit Was Filed, That The United States Claimed An Interest Adverse To The City's

The City filed this lawsuit in 2013, seeking a declaratory judgment that the City "has unencumbered title to the Airport Property." ER310 (Prayer for Relief ¶ 1). The City asked the district court to declare that "title to the Airport Property is quieted as against any interest of the United States"; that "the claims of the United States to the Airport Property are invalid"; and that "the United States has no right, title, or interest in the Airport Property." ER310-311 (Prayer for Relief ¶¶ 2, 3).

The district court correctly held that this suit is time barred. The record plainly shows that decades before this suit was filed, the City knew or should have known that the United States claimed an interest in the Airport Property adverse to the City's. The plain text of the 1948 Instrument of Transfer provided the City

---

[5] *See also*, *e.g.*, *Alaska v. Babbitt*, 75 F.3d 449, 452 (9th Cir. 1995); *Shultz v. Dep't of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989); *California ex. rel., State Land Comm'n v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396-97 (9th Cir. 1985).

-15-

with that notice.  The Instrument of Transfer expressly imposed a series of restrictions that "run with the land," including the requirement that "the land, buildings, structures, improvements and equipment in which this instrument transfers any interest shall be used for public airport purposes."  ER350.  In addition, the Instrument of Transfer expressly provided that, in the event the Airport Property is used "for other than airport purposes without the written consent of the Civil Aeronautics Administrator," "the title, right of possession and all other rights transferred by this instrument to [the City], or any portion thereof, shall at the option of [the United States] revert to [the United States] . . . ."  ER352. "[T]he use of the term 'title' in the Instrument of Transfer would have, or at least should have, alerted a reasonable landowner that the government claimed an interest in title to the land."  ER11.  "Moreover, even if the Instrument of Transfer did not provide notice that the United States claim an interest in the *title* to the land, it certainly put the City on notice that the United States claimed a substantial property interest in the land sufficient to create a cloud on title."  *Ibid*. (emphasis in original).

The City now contends that the "only interest in the City's Land that the United States previously held was a limited-term leasehold interest," and that any reversion of that interest "could have occurred only if the City had defaulted on the Instrument's obligations before the leases expired in 1953."  Br. 35; *see also*

-16-

ER302-03 (Complaint ¶ 85). But as the district court explained, "the City's statements and conduct since 1953 are totally inconsistent with and belie this contention." ER12 n.7.

On three separate occasions—in 1952, 1956, and 1984—the City requested that the United States release parcels of land from the restrictions in the 1948 Instrument of Transfer. ER11; *see* ER265 (1952 release); ER271-72 (1956 release); ER371 (1984 release). Contrary to the City's suggestion, "all of the releases explicitly refer to the 1948 Instrument of Transfer." ER11.

The 1984 release is illustrative. That release, made as part of the 1984 Settlement Agreement, stated that the FAA "consents to the use of land designated as parkland and residual land therein for other than airport and aviation purposes, releases the City and this parkland and residual land from any and all conditions, covenants, and restrictions imposed by the Instrument of Transfer dated August 10, 1948, Deed No. 4 (CCS), and agrees that the City may develop such parkland and residual land in accordance with the terms of this Agreement . . . ." ER371 ("Consent to Use of Land"). Given the FAA's express release of the Instrument's restrictions on airport land in 1984, the City cannot plausibly contend that it was unaware that the United States claimed an interest in the land at that time.

The City's official statements also belie its present contention that it was unaware after 1953 that the United States claimed an ongoing interest in the

Airport Property.  In 1962, in response to a question posed by the City Council about Santa Monica Airport's future operations, the City Attorney issued a legal opinion which concluded that "the City must operate the airport as an airport" and that "the City cannot legally unilaterally, on its own motion, abandon the use of the Santa Monica Municipal Airport as an airport."  ER181-82.  That conclusion was explicitly based in part on the Instrument of Transfer, *see* ER181, and the City Attorney quoted extensively from that Instrument, *see* ER176-81.

The California Attorney General reiterated that legal opinion in 1975, after quoting restrictions in the Instrument of Transfer that "run with the land."  ER189 & n.10.  The California Attorney General noted that the then-current City Attorney suggested that the Instrument of Transfer "may be voidable under general contract law."  ER189 n.10.  But there was no suggestion by either the California Attorney General or the City Attorney that the restrictions in the Instrument of Transfer had expired by their terms.

In short, the record unquestionably shows that the City knew or had reason to know more than twelve years before this suit was filed that "the United States claimed a substantial property interest in the land sufficient to create a cloud on title."  ER11.

-18-

### C.     The United States Did Not Abandon Its Interest In The Airport Property

The district court correctly rejected the City's contention that the United States "'clearly and unequivocally abandon[ed] its interest'" in the Airport Property through statements in an April 1971 letter, provisions of the 1984 Settlement Agreement, or statements in a subsequent administrative determination. ER12 (quoting *Kingman Reef*, 541 F.3d at 1201).

The April 1971 letter on which the City relies (Br. 54) made "no mention of the Instrument of Transfer" and merely made "an informal, non-binding statement to a third party that" the airport "is 'vulnerable' to being discontinued and its land used for non-airport purposes." ER12 (quoting ER47). Moreover, in another letter sent two months later, the FAA reminded the City of its obligations under the Instrument of Transfer and indicated that it had "no intention of consenting to the use of this property for other than airport purposes[.]" ER52 (June 1971 letter).

The 1984 Settlement Agreement on which the City relies (Br. 51, 54-55) resolved a number of disputes between the parties for a specified period of time. In relevant part, it provided:

> The City will operate and maintain the Airport as a viable functioning facility without derogation of its role as a general aviation reliever airport as described in Section 2(b)(i) of this Agreement or its capacity in terms of runway length and width, taxiway system, and runway weight bearing strength until July 1, 2015.

ER13 (quoting ER373) ("Commitment to Operate Airport"). "Contrary to the City's argument, this provision does not provide that the City is *only* required to operate [Santa Monica Airport] as an airport until July 1, 2015[.]" ER13 (district court's emphasis). By its terms, the 1984 Settlement Agreement was limited in duration and scope. *See* ER369 ("Scope and Duration") ("This Agreement shall be effective from the date of its execution until July 1, 2015."). The Agreement did not purport to determine the rights and obligations of the parties after its expiration in 2015, and it expressly preserved the rights of the parties. *See* ER366 (carryover paragraph setting out the "Purpose" of the Agreement).

Moreover, as discussed above, to the extent that the 1984 Settlement Agreement addressed the Instrument of Transfer, it released the restrictions from a specified parcel of land only. *See* ER371 ("Consent to Use of Land") (releasing restrictions on "land designated as parkland and residual land"). Although plaintiff now declares that this provision "'release[d] the City . . . from any and all conditions, covenants, and restrictions imposed by the Instrument of Transfer,'" Br. 55 (quoting ER371), plaintiff omits the limiting phrase "this parkland and residual land" from the quoted provision. *See* ER371 (pertinent provision "release[d] the City and *this parkland and residual land* from any and all conditions, covenants, and restrictions imposed by the Instrument of Transfer") (emphasis added). The introductory language in the same provison also made clear

-20-

that the release pertained only to "the use of land designated as parkland and residual land." *Ibid*.

The City's contention (Br. 55) that the FAA later interpreted the 1984 Settlement Agreement to surrender the federal government's rights under the Instrument of Transfer is equally unavailing. The City relies on a statement made by the FAA's Director of the Office of Airport Safety and Standards in the course of adjudicating a complaint alleging that that the City was violating its grant obligations. *See Santa Monica Airport Ass'n v. City of Santa Monica*, No. 16-99-21, 2000 WL 1824463, at \*6 (F.A.A. Nov. 22, 2000). In discussing the 1984 Settlement Agreement, the Director's Determination stated that the Agreement "makes clear that the City is obligated to operate the Airport only for the duration of the [1984] Agreement (through July 1, 2015) . . . . To the extent that Complainants and [the Airport Association] seek to prevent the future closure of the Airport or require the City to operate the Airport beyond July 1, 2015, that is a local land use matter." *Id*. at \*19.

As the district court explained, the Director's Determination did not consider the Instrument of Transfer, which was not included in the administrative record. *See* ER6, ER13. Moreover, the Director's Determination was an initial determination that was subject to further administrative review. The final decision issued by the FAA's Acting Associate Administrator for Airports stated that the

"1984 Airport Agreement provided the conceptual blueprint according to which [Santa Monica Airport] is to be reconfigured and administered by the City without derogation of [Santa Monica Airport's] role in the National Airport System as a general aviation reliever airport until July 1, 2015." ER6 (quoting *Santa Monica Airport Ass'n v. City of Santa Monica*, No. 16-99-21, 2003 WL 1963858, at *3 (F.A.A. Feb. 4, 2003)). And, as discussed above, the 1984 Settlement Agreement had a limited duration and did not address the rights and obligations of the parties after 2015.

The City cannot seriously contend that any of these statements abandoned the federal government's interest in the Airport Property "in clear and unequivocal terms." Br. 54. "'In a real estate transaction, a reasonable prospective purchaser intending to buy property free of any clouds on the title would require clear evidence that all adverse claims of ownership had been relinquished, as documented by a person with appropriate authority, and would not rely on informal letters and memos from low-level employees.'" ER12-13 (quoting *Kingman Reef*, 541 F.3d at 1200). The 1971 letter was an informal, non-binding statement to a third party that did not mention the Instrument of Transfer. The 1984 Settlement Agreement released the Instrument's restrictions for a specified parcel of land only. And the 2000 Director's Determination did not concern the Instrument of Transfer. Moreover, contrary to the City's suggestion (Br. 54), the Director did not

-22-

have authority to release the City from its obligations under the Instrument of Transfer.[6]

### D. The Statute Of Limitations Issue Is Not Inextricably Intertwined With The Merits

The district court correctly rejected the City's contention that the statute of limitations issue is inextricably intertwined with the merits. ER13-14. This Court rejected the same contention in *Kingman Reef*. This Court explained that "the question whether this action was timely was not inextricably intertwined with the ultimate merits issue of ownership" because the "crucial issue in the statute of limitations inquiry is whether the plaintiff had notice of the federal claim, not whether the claim itself is valid." *Kingman Reef*, 541 F.3d at 1197.

Indeed, the Supreme Court has held that dismissal of a Quiet Title Action claim on statute of limitations grounds does not resolve the underlying dispute. "If a claimant has title to a disputed tract of land, he retains title even if his suit to quiet his title is deemed time-barred under § 2409a([g])." *Block*, 461 U.S. at 291; *see also Rio Grande Silvery Minnow v. Bureau of Reclamanation*, 599 F.3d 1165, 1189 (10th Cir. 2010) (same).

---

[6] The FAA's Associate Administrator for Airports is authorized to release an entire airport from the restrictions imposed pursuant to the Surplus Property Act. *See* Order 5190.6A, ¶ 7-2(c) (version in effect in 2000); *see also* Order 5190.6B, ¶ 22.20 (current version).

Accordingly, the district court properly refrained from addressing the City's arguments regarding the validity of the federal government's claim, and we likewise do not address the merits here. If, in the future, the City ceases to operate Santa Monica Airport as an airport, and if the United States opts to exercise its right of reversion, the underlying dispute may be litigated in an action brought by the federal government. We note, however, that such a dispute is speculative and hypothetical. As the district court observed, the City admitted in the complaint that it has not decided to cease operating Santa Monica Airport as an airport. *See* ER16. Moreover, there is an open question whether the City's grant obligations independently require the City to operate Santa Monica Airport as an airport until 2023. *See* ER4 n.2 (noting but not resolving that dispute). And, even if the City in the future were to cease operating the property as an airport, reversion would not be automatic but an option for the United States.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

Of counsel:

KATHRYN B. THOMSON
  *General Counsel*
PAUL M. GEIER
  *Assistant General Counsel*
  *for Litigation*
PETER J. PLOCKI
  *Deputy Assistant General*
  *Counsel for Litigation*
  *U.S. Department of Transportation*

REGGIE GOVAN
  *Chief Counsel*
DAPHNE FULLER
  *Assistant Chief Counsel*
JONATHAN CROSS
  *Manager, Airports Law Branch*
SCOTT MITCHELL
  *Attorney-Advisor*
  *Federal Aviation Administration*

JOYCE R. BRANDA
  *Acting Assistant Attorney General*

ANDRÉ BIROTTE JR.
  *United States Attorney*

BETH S. BRINKMANN
  *Deputy Assistant Attorney General*

 /s/ Alisa B. Klein
ALISA B. KLEIN
MARK B. STERN
  *(202) 514-1597*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7235*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., N.W.*
  *Washington, D.C.  20530*
  *Alisa.klein@usdoj.gov*

JANUARY 2015

## STATEMENT OF RELATED CASES

I am unaware of any pending related cases within the meaning of Ninth

Circuit Rule 28-2.6.


 /s/ Alisa B. Klein
Alisa B. Klein

**CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)**

I hereby certify that this brief complies with the requirements of Fed. R.

App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New

Roman, a proportionally spaced font.  I further certify that this brief complies with

the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,809

words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii),

according to the count of Microsoft Word.


 /s/ Alisa B. Klein
Alisa B. Klein

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2015, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system.  The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.


 /s/ Alisa B. Klein
Alisa B. Klein